UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT F. FIAHLO, | Case No.: 14cv1378 GPC-MDD |
| Plaintiff, | REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE RE: DEFENDANTS' MOTION TO DISMISS |
| v. | |
| G. HERRERA, et. al., | |
| Defendants. | [ECF No. 32] |

This Report and Recommendation is submitted to United States District Judge Gonzalo P. Curiel pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1(c) of the United States District Court for the Southern District of California. For the reasons set forth herein, the Court **RECOMMENDS** Defendants' Motion to Dismiss be **GRANTED**.

## I.    Procedural Background

Plaintiff Scott F. Fiahlo is a state prisoner proceeding *pro se* and *in forma pauperis* with a complaint alleging a violation of the Civil Rights Act 42 U.S.C. § 1983. (ECF No. 1). Plaintiff filed his Complaint on June 5, 2014. (*Id.*). Defendants Kissol and Anderson, California Department of Corrections and Rehabilitation (CDCR) Correctional

1

1  Officers, filed a Motion to Dismiss on March 4, 2015.  (ECF No. 26).

2  Defendant Herrera, a registered nurse, subsequently submitted a

3  Notice of Joinder joining Defendants' Motion to Dismiss on March 6,

4  2015.  (ECF No. 28).  Plaintiff filed a Response in Opposition to

5  Defendants' Motion to Dismiss ("Response") on March 23, 2015.  (ECF

6  No. 29).  On April 4, 2015, Defendants Kissol and Anderson submitted a

7  reply.  (ECF No. 30).

8  **II.   Statement of Facts**

9         Plaintiff alleges that on January 25, 2014, while incarcerated at

10  Calipatria state prison, he received news via telephone from his family

11  that his eldest brother had been killed.  (ECF No. 1 at 3).  Plaintiff

12  claims that this distressing news caused him to lose track of the copious

13  amounts of water he was drinking, and that he became "very sick" as a

14  result.  (*Id*.).  Plaintiff then began vomiting, urinating, and defecating

15  on himself and within his cell, which he alleges caused him to slip and

16  fall on his head.  (*Id*.).  As a result of the fall, Plaintiff further asserts

17  that he became temporarily paralyzed in his movements and voice, but

18  that he remained "still conscious," and able to hear.  (*Id*.).

19

2

1    While paralyzed within his cell, Plaintiff claims that he overheard

2 Defendant Anderson telling Plaintiff to "get up" and asking why

3 Plaintiff was on the floor. (*Id.*). Defendant Anderson left and then

4 returned shortly after with a registered nurse, Defendant Herrera.

5 (*Id.*). Plaintiff contends that Defendants Anderson and Herrera

6 "started 'laughing at [him]' " and "making jokes," stating that Plaintiff

7 was drunk and needed to "sleep it off." (*Id.*). Plaintiff also asserts that

8 he overheard Defendant Kissol, a building control tower officer, tell

9 Defendants Anderson and Herrera to leave Plaintiff in his cell because

10 he was "just drunk," and made jokes at Plaintiff's expense as well. (*Id.*).

11 Consequently, Plaintiff claims that due to Defendants' inaction, he did

12 not receive medical treatment for another five to seven hours, leading to

13 a coma lasting two to four days, in violation of his Eighth Amendment

14 rights. (*Id.*).

15    On March 7, 2014, Plaintiff submitted an inmate administrative

16 appeal by filing a CDCR Form 602, (*Id.* at 52-53), and an inmate

17 healthcare appeal by filing a CDCR Form 602 HC, (*Id.* at 55). In his

18 administrative appeal, Plaintiff prayed for a "full investigation" and a

19 "detailed response of the investigation." (*Id.* at 52). Further, in his

3

14cv1378 GPC-MDD

1   healthcare appeal, Plaintiff demanded that Defendant Herrera be fired,

2   that her "medical license" be revoked, and requested a justification for

3   the alleged misconduct.  (*Id*. at 55).

4        A memorandum from the CDCR second level appeals' staff, dated

5   April 8, 2014, notified Plaintiff that his appeal was "granted," in that

6   "[a]n investigation is being conducted by the Office of Internal Affairs."

7   (*Id*. at 51).  Upon conclusion of this investigation, Plaintiff would be

8   notified of the results.  (*Id*.).  Additionally, in response to Plaintiff's

9   healthcare appeal, the CDCR second level appeals' staff informed

10  Plaintiff in a May 15, 2014 memorandum that his healthcare appeal

11  was "partially granted," in that the matter would also be referred to the

12  Officer of Internal Affairs for "follow-up and a possible investigation."

13  (*Id*. at 54).  The second level appeals staff informed Plaintiff that he

14  would be notified as to the results of the investigation into the

15  allegations stated in his healthcare appeal.  (*Id*.).  Both memoranda

16  considered the appeal a staff complaint, requiring the details of any

17  inquiry to remain confidential.

18       On June 5, 2014, Plaintiff filed this Complaint without awaiting

19  the results of the pending investigations.  Plaintiff requests that the

4

1  court grant him $50,000 or more in general and punitive damages, as

2  well as order the firing of the named Defendants from CDCR

3  employment.  (*Id*. at 7).

4  **III.  Summary of Arguments**

5       In his Complaint, Plaintiff alleges that staff misconduct

6  constituted cruel and unusual punishment, depriving him of his

7  Constitutional rights under the Eighth Amendment.  (ECF No. 1 at 3).

8  Specifically, Plaintiff claims that Defendants refused to provide him

9  adequate medical treatment because Defendants falsely believed he was

10  intoxicated, causing Plaintiff further medical harm and suffering due to

11  delay in treatment.  (*Id*.).

12       Defendants urge dismissal of the Complaint under Federal Rule of

13  Civil Procedure 12(b)(6), because Plaintiff admits in his Complaint that

14  he has failed to exhaust all administrative remedies as required by 42

15  U.S.C. § 1997e(a).  (ECF No. 26 at 6).

16       In his opposition, Plaintiff claims that he is "not obligated to

17  pursue the appeal through the third level in order to exhaust

18  administrative remedies," since his appeals have been granted or

19  partially granted at a lower level.  (ECF No. 29 at 1).  Therefore,

14cv1378 GPC-MDD

1   Plaintiff asserts his claims are fully exhausted and the Defendants'

2   Motion to Dismiss should be denied.  (*Id*.).

3        In their Reply, Defendants disagree that the grant of an ongoing

4   investigation at a lower level constitutes exhaustion, and distinguish

5   the cases Plaintiff relies upon.  (ECF No. 30).

6   **IV.   Standard of Review**

7        Failure to exhaust is an affirmative defense that defendants must

8   raise and prove.  *See Jones v. Bock*, 549 U.S. 199, 212-17 (2007)

9   (explaining that inmates are not required to plead specifically or

10  demonstrate exhaustion in their complaints).  In the rare case a

11  prisoner's failure to exhaust is clear from the face of the complaint, a

12  "defendant may successfully move to dismiss under Rule 12(b)(6) for

13  failure to state a claim."  *Albino v. Baca*, 747 F.3d 1162, 1169 (9th Cir.

14  2014).  Although a motion to dismiss is not the appropriate method for

15  deciding disputed factual questions relevant to exhaustion,

16  "[e]xhaustion should be decided, if feasible, before reaching the merits

17  of a prisoner's claim."  *Id*. at 1170.

18       Since exhaustion is an affirmative defense, Defendants bear the

19  burden of demonstrating "that pertinent relief remained available,

6

whether at unexhausted levels of the grievance process or through

awaiting the results of the relief already granted as a result of the

process." *Brown v. Valoff*, 422 F.3d 926, 936-37 (9th Cir. 2004) (citing

*Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003)).

## V.   Analysis

Under the Prison Litigation Reform Act (PLRA), "[n]o action shall

be brought with respect to prison conditions under . . . [42 U.S.C. §

1983], or any other Federal law, by a prisoner confined in any jail,

prison, or other correctional facility until such administrative remedies

as are available are exhausted."  42 U.S.C. § 1997e(a) (West 2014); *see*

*also Booth v. Churner*, 532 U.S. 731, 736 (2001) (requiring exhaustion

even where relief sought cannot be granted by administrative process);

*Morton v. Hall*, 599 F.3d 942, 945 (9th Cir. 2010).   "[A] prisoner must

complete the administrative review process in accordance with the

applicable procedural rules . . . as a precondition to bringing suit in

federal court."   *Woodford v. Ngo*, 548 U.S. 81, 88 (2006).   Prisoners

must exhaust their administrative remedies prior to filing suit, not

during the pendency of the suit. *See McKinney v. Carey*, 311 F.3d 1198,

1199 (9th Cir. 2002) (per curiam) (requiring dismissal without prejudice

1  where a prisoner "d[oes] not exhaust his administrative remedies prior

2  to filing suit but is in the process of doing so when a motion to dismiss is

3  filed").

4        Prisoners are required to exhaust prison administrative

5  procedures regardless of whether the type of relief they seek matches

6  the type of relief available through administrative procedures.  *See*

7  *Booth*, 532 U.S. at 741; *see also Morton*, 599 F.3d at 945.  However, the

8  PLRA requires exhaustion only of those administrative remedies "as are

9  available," and the PLRA does not require exhaustion when

10  circumstances render administrative remedies "effectively unavailable."

11  *Nunez v. Duncan*, 591 F.3d 1217, 1223-26 (9th Cir. 2010) (holding that

12  plaintiff's failure to timely exhaust his administrative remedies was

13  excused because he took reasonable steps to exhaust his claim and was

14  precluded from exhausting by the warden's mistake).  A prisoner's

15  participation in an internal investigation of official conduct does not

16  constitute constructive exhaustion of administrative remedies.  *See*

17  *Panaro v. City of N. Las Vegas*, 432 F.3d 949, 953-54 (9th Cir. 2005).

18        Defendant contends that the Plaintiff admits in his complaint that

19  the second level appeals process has yet to be concluded.  Referring to

14cv1378 GPC-MDD

his administrative and healthcare appeals in his Complaint, Plaintiff concedes that "there has been no conclusion [sic] yet on both 602s, they [CDCR officials] are still investigating . . . . The CDCR authorities have not given me no indications of how long or estimations [sic] these investigations will take." (ECF No. 1 at 6) (internal quotation marks omitted). Defendants argue that within the CDCR staff misconduct appeals process, there remains a third level of review that Plaintiff must pursue, under PLRA § 1997e(a), before he can bring a Complaint before this Court.

Plaintiff claims that he has received "the full extent of relief" available and is "not obligated to pursue the appeal through the third level in order to exhaust administrative remedies," because he received favorable decisions granting an investigation. (ECF No. 29). In his Response, Plaintiff relies on the decision in *Brown v. Valoff*, 422 F.3d 926 (9th Cir. 2004).

Plaintiff's reliance on the decision in *Brown* is misplaced. In *Brown*, the Ninth Circuit considered two cases in which both prisoners utilized the inmate appeals process by filing appeals but failed to pursue their appeals up to the third and final level of review after

14cv1378 GPC-MDD

1   receiving responses at intermediate levels of review.  *Brown*, 422 F.3d

2   at 929.  In distinguishing the two cases before it, the court established

3   that a prisoner has not exhausted his claim if an investigation remains

4   pending, some relief is still available, and CDCR has not informed

5   plaintiff that no remedies are available.  *Id*. at 935, 942.

6        It is apparent from the face of Plaintiff's complaint that he has

7   failed to exhaust.  Plaintiff admits second level appeal investigations

8   are still pending.  As the *Brown* court held, "[u]ntil the staff misconduct

9   investigation was completed, the Department had not had a full

10  opportunity to investigate the complaint and to develop an

11  understanding of the facts underlying it.  Moreover, even absent any

12  specific information regarding the results of the investigation, it is

13  conceivable that a prisoner who learns that his allegations were

14  "partially sustained" would be satisfied that he had been heard and

15  proceed no further."  *Id*. at 942.

16       Indeed, in this instance, much of the very relief Plaintiff requested

17  is still available, though not in the level of detail he would like.

18  Plaintiff requested a "full investigation" and a "detailed response of the

19  investigation" in his administrative appeal, (*Id*. at 52), and the firing of

1   Defendant Herrera, revocation of her "medical license," and a

2   justification for the alleged misconduct in his healthcare appeal, (*Id*. at

3   55).  Under *Booth*, Plaintiff is still required to exhaust prison

4   administrative procedures regardless of whether the relief sought

5   matches the type of relief available through administrative procedures.

6   *See Booth*, 532 U.S. at 739 and 741 n.6 ("an inmate must exhaust

7   irrespective of the forms of relief sought and offered through

8   administrative avenues," and "regardless of the fit between a prisoner's

9   prayer for relief and the administrative remedies possible").  Plaintiff

10  was informed that upon completion of an investigation, he will receive

11  further relief in the form of notification as to whether the allegations

12  were sustained, not sustained, unfounded, exonerated, or there was no

13  finding.  (*Id*. at 54).  Moreover, as Defendants argue, if the investigation

14  yields the result "not sustained," "unfounded," "exonerated," or "no

15  finding," Plaintiff will not have achieved vindication for his allegations

16  of staff misconduct, nor receive an exoneration from the allegation of

17  intoxication.  (ECF 29 at 4-5).  Defendants further state that Plaintiff

18  will have the opportunity to appeal these unfavorable results at the

19  third level of appeal.  (*Id*.).  This further demonstrates the possibility

11

14cv1378 GPC-MDD

1   that some relief, through the exoneration of claims of intoxication and

2   the acknowledgement of the legitimacy of his claims of staff misconduct,

3   remains available.  Plaintiff acknowledges he has not received the

4   results from the investigation.  This demonstrates that the very relief

5   Plaintiff sought – an investigation and the results – are still available

6   through the CDCR grievance process that Plaintiff prematurely

7   abandoned.

8        In addition, Plaintiff has not been informed that no further

9   remedies are available.  To the contrary, the second level appeal

10  response specifically advised Plaintiff that it is only "[o]nce a decision

11  has been rendered at the Third Level, your administrative remedies will

12  be considered exhausted."  (ECF No. 1 at 51).  Further, in his

13  healthcare appeal, Plaintiff was advised that "[a]llegations of staff

14  misconduct do not limit or restrict the availability of further relief via

15  the inmate appeals process."  (*Id*. at 54).

16       Finally, Plaintiff also relies on the decisions *Brady v. Attygala*,

17  196 F.Supp.2d 1016 (C.D. Cal. 2002) and *Gomez v. Winslow*, 177

18  F.Supp.2d 977 (N.D. Cal. 2001).  *Brady* and *Gomez* are dissimilar from

19  Plaintiff's case.  In *Brady* and *Gomez*, the courts determined that prison

12

14cv1378 GPC-MDD

1    officials had offered and/or provided the prisoners all of the relief they

2    had requested.  Therefore the prisoners were not required to exhaust

3    the highest level of review prior to filing their complaints in federal

4    court.  *See Brady*, 196 F. Supp 2d at 1023; *Gomez*, 177 F. Supp. 2d at

5    984.  In this case, however, Plaintiff's appeals were granted and

6    partially granted only in that the Office of Internal Affairs would

7    conduct investigations, the results of which remain forthcoming.  The

8    grievance process continues to offer Plaintiff the "possibility of some

9    relief for the action complained of."  *See Booth*, 532 U.S. at 738-39.

10         The Court finds that Defendants have met their burden to show

11   that it is apparent from the face of the pleadings that Plaintiff failed to

12   exhaust his claim of cruel and unusual punishment under PLRA §

13   1997e(a) before filing this action.  Accordingly, this Court

14   **RECOMMENDS** that Defendants' Motion to Dismiss be **GRANTED**.

15   **VI.**   **Conclusion**

16         For the reasons set forth herein, this Court **RECOMMENDS** that

17   the Court issue an Order approving and adopting this Report and

18   Recommendation.  The Court further **RECOMMENDS** Defendants'

19   Motion to Dismiss be **GRANTED**.

14cv1378 GPC-MDD

1         This Report and Recommendation will be submitted to the United

2    States District Judge assigned to this case, pursuant to the provisions of

3    28 U.S.C. § 636(b)(1).  Any party may file written objections with the

4    Court and serve a copy on all parties by **May 15, 2015**.  The document

5    shall be captioned "Objections to Report and Recommendation."  Any

6    reply to the objections shall be served and filed by **May 22, 2015**.

7         The parties are advised that failure to file objections within the

8    specified time may waive the right to raise those objections on appeal of

9    the Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

10   **IT IS SO ORDERED.**

11

12   Date:   April 24, 2015

13                                    Hon. Mitchell D. Dembin
14                                    United States Magistrate Judge

15

16

17

18

19

14

14cv1378 GPC-MDD