1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT F. FIAHLO,<br><br>                               Plaintiff,<br><br>v.<br><br>G. HERRERA, et. al.,<br><br>                               Defendants. | Case NO.  14cv1378-GPC(MDD)<br><br>**ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION GRANTING DEFENDANTS' MOTION TO DISMISS**<br><br>**[ECF Nos. 26, 32]** |

Scott F. Fiahlo ("Fiahlo"), a state prisoner proceeding *pro se*, filed a Complaint pursuant to 42 U.S.C. section 1983, alleging constitutional violations for an incident occurring on January 25, 2014 at the Calipatria State Prison ("CSP"). (Dkt. No. 1.) On March 4, 2015, Defendants Kissol and Anderson ("Kissol" and "Anderson") moved to dismiss the complaint for failure to state a claim. (Dkt. No. 26.) Defendant Herrera joined Defendants' Motion to Dismiss on March 6, 2015. (Dkt. No. 28.) On March 23, 2015, Plaintiff filed a response in opposition to Defendants' motion to dismiss ("Response"). (Dkt. No. 29.) Defendants Kissol and Anderson filed a reply on April 4, 2015. (Dkt. No. 30.) On April 24, 2015, the Magistrate Judge filed a report and recommendation granting Defendants' motion to dismiss the complaint for failure to state a claim. (Dkt. No. 32.) After a careful review of the briefing, supporting documentation and the applicable law,

the Court **ADOPTS** the report and recommendation and thereby **GRANTS** Defendants'
motion to dismiss the complaint for failure to state a claim.

### PROCEDURAL BACKGROUND

On June 5, 2014, Plaintiff filed a complaint against Defendants Correctional
Officers Kissol and Anderson, and Registered Nurse ("R.N.") G. Herrera. (Dkt. No. 1.)
Fiahlo alleges that Defendants violated his Eighth Amendment constitutional right in
refusing to provide him adequate medical treatment, which caused him harm and
suffering due to delay in treatment. (Id. at 3.)

On March 4, 2015, Defendants Kissol and Anderson filed a motion to dismiss the
complaint under Federal Rule of Civil Procedure 12(b)(6), because Plaintiff failed to
exhaust all administrative remedies as required by 42 U.S.C. § 1997e(a). (Dkt. No. 26 at
6.) Two days later, Defendant Herrera filed a notice of joinder to Defendants Kissol and
Anderson's motion to dismiss. (Dkt. No. 28.)

On March 23, 2015, Plaintiff filed a Response in opposition to Defendants' motion
to dismiss the complaint. (Dkt. No. 29.) Defendants Kissol and Anderson filed a reply to
Plaintiff's response in opposition to the motion to dismiss on April 4, 2015. (Dkt. No.
30.)

On April 24, 2015, the Magistrate Judge filed a report and recommendation
granting Defendants' motion to dismiss the complaint. (Dkt. No. 32.)

### FACTUAL BACKGROUND

According to the Complaint, on January 25, 2014 while incarcerated at CSP,
Fiahlo got a call from his family and received news that his eldest brother had been
killed. (Dkt. No. 1 at 3.) The news caused Fiahlo to lose track of the copious amounts of
water he was drinking, and he became "very sick" as a result. (Id.) Fiahlo then began to
vomit, urinate and defecate on himself in his cell, which caused him to slip and fall on his
head. (Id.) As a result of the fall, Fiahlo became temporarily paralyzed in his movements
and voice, but was "still conscious" and able to hear. (Id.)

Fiahlo overheard Anderson tell him to "get up," and asked Fiahlo why he was on

the floor. (Id.) Anderson then left the room and returned shortly after with Herrera, a registered nurse. (Id.) Anderson and Herrera "started 'laughing at [him]'" and "making jokes," stating that Fiahlo was drunk and needed to "sleep it off." (Id.) Plaintiff additionally overheard Kissol, a building control tower officer, tell Anderson and Herrera to leave Fiahlo in his cell because he was "just drunk." (Id.) Kissol also made jokes at Fiahlo's expense. (Id.) As a result, Fiahlo received medical treatment five to seven hours later, which lead to a coma lasting two to four days. (Id.)

On March 7, 2014, Fiahlo submitted an inmate administrative appeal by filing a California Department of Corrections and Rehabilitation ("CDCR") 602 Form, as well as an inmate healthcare appeal by filing a CDCR 602 HC Form. (Dkt. No. 1-2 at 52-53, 55.) In his administrative appeal, Fiahlo prayed for a "full investigation" and a "detailed response of the investigation." (Id. at 52.) In his healthcare appeal, Plaintiff asked that Herrera be fired, her "medical license" revoked, and requested a justification for the misconduct. (Id. at 55.)

A memorandum from the second level appeals staff at CDCR, dated April 8, 2014, notified Fiahlo that his appeal was "granted," in that "[a]n investigation is being conducted by the Office of Internal Affairs." (Id. at 51.) Fiahlo would be notified of the results upon conclusion of the investigation. (Id.) In response to Fiahlo's healthcare appeal, the second level appeals staff at CDCR informed Fiahlo in a May 15, 2014 memorandum that his healthcare appeal was "partially granted," in that the matter would also be referred to the Office of Internal Affairs for "follow-up and a possible investigation." (Id. at 54.) Fiahlo was also informed that he would be notified as to the results of the investigation into the allegations stated in his healthcare appeal. (Id.)

On June 5, 2014, Fiahlo filed the operative Complaint, prior to receiving results of the pending investigations. Fiahlo asks that the Court grant him $50,000 or more in general and punitive damages, in addition to the firing of the named Defendants from employment at CDCR. (Dkt. No. 1 at 7.)

**DISCUSSION**

**A.   Standard of Review**

The district court "shall make a *de novo* determination of those portions of the report . . . to which objection is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). When the parties do not object, a district court may assume the correctness of the magistrate judge's findings of fact and decide the motion on the applicable law. Campbell v. U.S. Dist. Court, 501 F.2d 196, 206 (9th Cir. 1974); Johnson v. Nelson, 142 F. Supp. 2d 1215, 1217 (S.D. Cal. 2001).

**B.   Legal Standard under Federal Rule of Civil Procedure 12(b)(6)**

Federal Rule of Civil Procedure ("Rule") 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Dismissal is warranted under Rule12(b)(6) where the complaint lacks a cognizable legal theory. Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984). Alternatively, a complaint may be dismissed where it presents a cognizable legal theory, yet fails to plead essential facts under that theory. Id. While a plaintiff need not give "detailed factual allegations," a plaintiff must plead sufficient facts that, if true, "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 545 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 547). A claim is facially plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

Allegations in pro se complaints are generally held to less stringent standards than complaints drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520 (1972). Thus, courts have an obligation to construe these complaints liberally and to afford the prisoner the benefit of any doubt. Bretz v. Kelman, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en

4

banc).  However, "a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled. Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." Bruns v. NCUA, 122 F.3d 1251, 1257 (9th Cir. 1997) (citing Ivey v. Board of Regents, 673 F.2d 266 (9th Cir. 1982)).

**C.    Legal Standard under the Prison Litigation Reform Act**

The Prison Litigation Reform Act ("PLRA") requires that "[n]o action shall be brought with respect to prison conditions under. . . [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); see also Booth v. Churner, 532 U.S. 731, 736 (2001) (requiring exhaustion even where relief sought cannot be granted by administrative process); Morton v. Hall, 599 F.3d 942, 945 (9th Cir. 2010). "[A] prisoner must complete the administrative review process in accordance with the applicable procedural rules . . . as a precondition to bringing suit in federal court." Woodford v. Ngo, 548 U.S. 81, 88 (2006). Prisoners must exhaust their administrative remedies prior to filing suit, not during the pendency of the suit. See McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002) (per curiam) (requiring dismissal without prejudice where a prisoner "d[oes] not exhaust his administrative remedies prior to filing suit but is in the process of doing so when a motion to dismiss is filed").

Prisoners are required to exhaust prison administrative procedures regardless of whether the type of relief they seek matches the type of relief available through administrative procedures. See Booth, 532 U.S. at 741; see also Morton, 599 F.3d at 945. However, the PLRA requires exhaustion only of those administrative remedies "as are available," and the PLRA does not require exhaustion when circumstances render administrative remedies "effectively unavailable." Nunez v. Duncan, 591 F.3d 1217, 1223-26 (9th Cir. 2010) (holding that plaintiff's failure to timely exhaust his administrative remedies was excused because he took reasonable steps to exhaust his

claim and was precluded from exhausting by the warden's mistake). A prisoner's participation in an internal investigation of official conduct does not constitute constructive exhaustion of administrative remedies. See Panaro v. City of N. Las Vegas, 432 F.3d 949, 953-54 (9th Cir. 2005).

**D.   Analysis**

**1.   Defendants' Motion to Dismiss**

Defendants urge dismissal of the Complaint because Plaintiff admits in his Complaint that he has failed to exhaust all administrative remedies. (Dkt. No. 26 at 6.) Defendants refer to Plaintiff's administrative and healthcare appeals in his Complaint, where he concedes that "there has been no conclusion [sic] yet on both 602s, they [CDCR officials] are still investigating . . . The CDCR authorities have not given me no [sic] indications of how long or estimations [sic] these investigations will take." (Dkt. No. 1 at 6.) (internal quotation marks omitted). Defendants argue that within the CDCR staff misconduct appeals process, there remains a third level of review that Plaintiff must pursue under PLRA § 1997e(a), before he can bring a Complaint on these issues before this Court. (Dkt. No. 26 at 5-6.)

In his response, Plaintiff claims he is "not obligated to pursue the appeal through the third level in order to exhaust administrative remedies," since his appeals have been granted or partially granted at the lower level. (Dkt. No. 29 at 1.) Plaintiff therefore asserts that his claims are fully exhausted and the Defendants' motion to dismiss should be denied. (Id.) To support this contention, Plaintiff relies on the decision in Brown v. Valoff, 422 F.3d 926 (9th Cir. 2004).

Failure to exhaust is an affirmative defense that defendants must raise and prove. See Jones v. Bock, 549 U.S. 199, 212-17 (2007) (explaining that inmates are not required to plead specifically or demonstrate exhaustion in their complaints). In the rare case a prisoner's failure to exhaust is clear from the face of the complaint, a "defendant may successfully move to dismiss under Rule 12(b)(6) for failure to state a claim." Albino v. Baca, 747 F.3d 1162, 1169 (9th Cir. 2014). Although a motion to dismiss is not the

appropriate method for deciding disputed factual questions relevant to exhaustion, "[e]xhaustion should be decided, if feasible, before reaching the merits of a prisoner's claim." Id. at 1170.

Since exhaustion is an affirmative defense, Defendants bear the burden of demonstrating "that pertinent relief remained available, whether at unexhausted levels of the grievance process or through awaiting the results of the relief already granted as a result of the process." Brown, 422 F.3d at 936-37 (citing Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003)).

The Magistrate Judge recommends granting Defendants' motion to dismiss on the ground that Defendants met their burden to show that from the face of the pleadings, Plaintiff failed to exhaust his claim of cruel and unusual punishment under the PLRA prior to filing this action. (Dkt. No. 32 at 13.) The Magistrate noted that from the face of the Complaint, Plaintiff has failed to exhaust administrative remedies, as Plaintiff himself admits that second level appeal investigations are still pending. (Id. at 10.) Further, the Magistrate Judge found Plaintiff's reliance on Brown misplaced. (Id. at 9-10.)

The Court agrees with the Magistrate Judge's finding of Plaintiff's reliance on this case as misplaced, and further notes that it is directly contrary to his contentions. In Brown, the Ninth Circuit considered two cases in which both prisoners filed appeals but failed to pursue them up to the third and final level of review after receiving responses at the intermediate levels of review. Brown, 422 F.3d at 929. In distinguishing the two cases before it, the court established that a prisoner has not exhausted his claim if an investigation remains pending, some relief is still available, and CDCR has not informed plaintiff that no remedies are available. Id. at 935, 942.

The Magistrate Judge found that much of the very relief Plaintiff requested is still available, albeit not necessarily in the level of detail he requested. (Dkt. No. 32 at 10.) We agree. Plaintiff requested a "full investigation" and a "detailed response of the investigation" in his administrative appeal, and the firing of Defendant Herrera, a revocation of her "medical license," and a justification for the alleged misconduct in his

7

healthcare appeal. (Dkt. No. 1-2 at 52, 55.)  However, Plaintiff is still required to exhaust prison administrative procedures regardless of whether the relief sought matches the type of relief available through administrative procedures. See Booth, 532 U.S. at 739, 741 n.6 (noting that "an inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues," *id.* at 739, "regardless of the fit between a prisoner's prayer for relief and the administrative remedies possible," *id.* at 741 n.6). As set forth above, Plaintiff was informed that upon completion of an investigation, he would receive further relief in the form of notification as to whether the allegations were sustained, not sustained, unfounded, exonerated, or there was no finding. (Dkt. No. 1-2 at 54.)

Moreover, Defendants argue that if the investigation yields the result "not sustained," "unfounded," "exonerated" or "no finding," Plaintiff would not achieve vindication for his allegations of staff misconduct, or receive an exoneration from the allegation of intoxication. (Dkt. No. 29 at 4-5.) Defendants point out that Plaintiff will have the chance to appeal these unfavorable results at the third level of appeal. (Id.) This demonstrates that some relief, through the exoneration of claims of intoxication and the acknowledgement of the legitimacy of his claims of staff misconduct, remains available.

Plaintiff acknowledges that he has yet to receive the results from the investigation. This shows that the very relief sought, an investigation and the results, are still in fact available through the CDCR grievance process that Plaintiff prematurely abandoned. In addition, Plaintiff has not been informed that no further remedies are available to him. To the contrary, the response he received at the second level of appeal specifically advised Plaintiff that it is only "[o]nce a decision has been rendered at the Third Level, your administrative remedies will be considered exhausted." (Dkt. No. 1-2 at 51.) Further, in his healthcare appeal, Plaintiff was advised that "[a]llegations of staff misconduct do not limit or restrict the availability of further relief via the inmate appeals process." (Id. at 54.)

The Court agrees with the Magistrate Judge's finding that Defendants have met their burden and shown that, from the face of the pleadings, it is apparent Plaintiff failed

to exhaust his claim of cruel and unusual punishment under PLRA § 1997e(a) before filing the operative Complaint. Accordingly, the Court **ADOPTS** the report and recommendation granting Defendants' motion to dismiss for failure to state a claim.

## CONCLUSION

For the foregoing reasons, the Court **ADOPTS** the Magistrate Judge's report and recommendation and **GRANTS** Defendants' motion to dismiss for failure to state a claim.

**IT IS SO ORDERED.**

Dated:  December 2, 2015

Hon. Gonzalo P. Curiel
United States District Judge

14cv1378-GPC(MDD)